**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

TOWERCO VI, LLC

      Plaintiff,

  v.

RIO ARRIBA COUNTY, NEW MEXICO;
BOARD OF RIO ARRIBA COUNTY
COMMISSIONERS; and Moises Morales,
Alex Naranjo, and Brandon Bustos, each in
his/her official capacity as a Commissioner
on the Board of Rio Arriba County
Commissioners,

      Defendants.

Case No.: 1:26-cv-00604

**PLAINTIFF TOWERCO VI, LLC'S COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND EXPEDITED TREATMENT**

For its Complaint against defendants Rio Arriba County, New Mexico ("County"); Board

of Rio Arriba County Commissioners ("the Board"); and Moises Morales, Alex Naranjo, and

Brandon Bustos each in his/her official capacity as a Commissioner on the Board of Rio Arriba

County Commissioners (collectively "the Commissioners") (together, the County, the Board, and

the Commissioners are referred to herein as "Defendants"), Plaintiff TowerCo VI, LLC

("Plaintiff" or "TowerCo"), by and through its undersigned counsel, upon knowledge as to its

own actions and dealings and upon information and belief as to Defendants and their actions,

allege as follows:

**<u>Nature of the Action</u>**

1.     This action arises from Defendants' unlawful denial of Plaintiff's Special Use

Permit ("SUP") application to construct a wireless communications facility in the form of a 120-

Complaint for Declaratory and Injunctive Relief and Expedited Treatment - Page 1

foot communications tower ("Proposed Facility") at 3 Private Drive 1690, on parcel number 1048136165429, in the town of Ojo Caliente, in Rio Arriba County, New Mexico. ("Subject Property").

2.  The Proposed Facility seeks to remedy a significant gap in telecommunication service coverage along Highway 285 in the Ojo Caliente community of Rio Arriba County. Currently, there are no other wireless communications towers within a one-mile radius of the Subject Property suitable for collocation, nor are there any existing structures sufficient to accommodate a wireless communications facility and provide the required coverage to close the current service gap.

3.  The Subject Property is located in a rural area off Highway 285 with little development nearby, making the Proposed Facility compatible with its surrounding uses. Plaintiff has designed the Proposed Facility to be as unobtrusive as possible – selecting a single monopole design coated with a non-reflective galvanized gray finish that minimizes visual impact.

4.  Plaintiff submitted its application for an SUP to construct the Proposed Facility and provided detailed evidence supporting the Proposed Facility's compliance with the Rio Arriba County Ordinances. Plaintiff also submitted coverage maps and other evidence demonstrating the existence of a significant gap in personal wireless coverage near the Subject Property and along Highway 285. Plaintiff also submitted evidence that it investigated the availability of alternative sites and found that there were no suitable alternatives that were less intrusive than the Proposed Facility at the Subject Property.

5.  The Rio Arriba Planning and Zoning Committee, and its third-party consultant, Wireless Tower Solutions, (together the "Planning Committee"), concluded that the Proposed

Complaint for Declaratory and Injunctive Relief and Expedited Treatment - Page 2

Facility would comply with all County ordinance requirements. Further, the Planning Committee concurred with Plaintiff's conclusions regarding the coverage gap and alternatives analysis and recommended approval of the SUP for the Proposed Facility.

6.    Despite the Planning Committee's recommendation, the ample evidence in the record demonstrating both that the Proposed Facility complied with the standards and criteria contained in the Rio Arriba County Ordinances, and that a denial of the Application would result in an effective prohibition of personal wireless service, the County nonetheless denied Plaintiff's Application.

7.    The County's denial effectively prohibits the provision of personal wireless service in the vicinity of the Subject Property and is not supported by substantial evidence in a written record, in violation of the Federal Communications Act, as amended, 47 U.S.C. § 332(c)(7)(B) ("Communications Act" or "Act"). TowerCo, therefore, seeks a declaratory judgment and order from this Court directing Defendants to grant TowerCo's application for the Proposed Facility in accordance with its rights under the Communications Act.

8.    TowerCo also requests expedited treatment of this Complaint pursuant to 47 U.S.C. § 332(c)(7)(b)(v).

### Parties

9.    Plaintiff TowerCo is a Delaware limited liability company with its principal place of business in Cary, North Carolina. TowerCo is registered to do business in the State of New Mexico. TowerCo owns and manages tower assets and wireless infrastructure that are used by national and regional wireless carriers to provide personal wireless services to end-user consumers in New Mexico and throughout a number of locations across the United States.

Complaint for Declaratory and Injunctive Relief and Expedited Treatment - Page 3

10.     Defendant Rio Arriba County, New Mexico, is a county located in northern New Mexico.

11.     Defendant Board of Rio Arriba County Commissioners is the governing body of Rio Arriba County.  The Board enacts ordinances and ensures compliance with county regulations, including making final decisions on applications for SUPs, such as the SUP required by the County to construct wireless communications facilities in certain zoning districts as prescribed by law and regulation.

12.     Defendants Moises Morales, Alex Naranjo, and Brandon Bustos serve as Commissioners on the Board that denied TowerCo's application at issue in this litigation.  Each of the individual Commissioners is named as a Defendant in the above-captioned matter solely in his or her official capacity as a Commissioner.

**Jurisdiction and Venue**

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because of federal questions arising under the Communications Act of 1934, as amended by the Communications Act of 1996 (the "Communications Act," or "Act").  The Court has the authority to issue declaratory judgment relief pursuant to 28 U.S.C. § 2201(a).

14.     TowerCo, as an entity adversely affected by Defendants' actions that are inconsistent with and preempted by 47 U.S.C. § 332(c)(7)(B), has standing to bring the claims in this Complaint pursuant to 47 U.S.C. § 332(c)(7)(B)(v).

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), in that a substantial part of the actions, events, or omissions giving rise to this action occurred in Rio Arriba County, in the District of New Mexico.

16.     This action is timely filed because it was filed within thirty days after the Board's written denial of TowerCo's SUP application, which was the Defendants' final action related to TowerCo's SUP application.

**Statement of Facts**

**Federal Statutory Control of Wireless Siting**

17.     The federal Communications Act governs federal, state, and local government regulation of the siting of personal wireless service facilities, such as the one at issue in this case. 47 U.S.C. § 332(c)(7)(B).

18.     The Communications Act provides that any person adversely affected by a state or local government's act, or failure to act, that is inconsistent with 47 U.S.C. § 332(c)(7) of the Communications Act may seek review in federal courts, and that the courts shall hear and decide the action on an expedited basis. 47 U.S.C. § 332(c)(7)(B)(v).

19.     TowerCo constructs, owns, and manages tower assets and wireless infrastructure used by national and regional wireless carriers to provide personal wireless services to end-user consumers in New Mexico and elsewhere in the United States.  TowerCo leases space on its facilities to national and regional wireless carriers, including national carriers such as Verizon Wireless ("Verizon"), each of which provides personal wireless services and other telecommunications services, as those terms are defined under federal law, to end-user wireless customers.  In providing this valuable service to wireless carriers, TowerCo facilitates the development and deployment of advanced wireless services, consistent with the goals of the Communications Act.

20.     To provide reliable personal wireless service to end-user wireless customers, coverage and capacity from cell sites must overlap in a grid pattern often resembling a

Complaint for Declaratory and Injunctive Relief and Expedited Treatment - Page 5

honeycomb.  If TowerCo cannot construct a cell site within a specific geographic area, then the wireless carriers it serves will not be able to provide wireless service to consumers within that area.

21.     To determine where a new wireless facility is required,  radiofrequency ("RF") engineers use various techniques, such as sophisticated computer modeling programs and field testing, to complete propagation studies, which shows where cell sites need to be located to provide reliable wireless service to users in the area.  The propagation studies also consider topography, the coverage boundaries of neighboring wireless communications facilities, and other factors.  For a wireless network to perform adequately, cell sites must be located, constructed, and operated so that the wireless carrier can achieve reliable service for its customers.  If there is no functioning wireless communications facility in a given area, then there will be no reliable service for customers within that area, and customers who live or travel in the area will experience an unacceptable level of dropped calls and connection failures, including the potential inability to make E-911 emergency calls.

<strong>The Proposed Facility and Application Process</strong>

22.     Based upon the research and analysis performed by its RF engineers, Verizon has determined that it has a significant gap in its ability to provide service in Rio Arriba County in the area along Highway 285 near the town of Ojo Caliente, NM.

23.     Highway 285 is one of the main connecting highways between northern New Mexico and Santa Fe.  The gap in service is significant based, among other things, on the vehicular traffic on the affected stretch of Highway 285.  According to 2024 New Mexico Department of Transportation data, the Annual Average Daily Traffic through this stretch of Highway 285 is 2,279.  *Traffic Count (TCDS)*, NEW MEXICO DEPARTMENT OF TRANSPORTATION,

Location ID 24929), https://nmdot.public.ms2soft.com/tcds/tsearch.asp?loc=Nmdot (last visited February 16, 2026)  (showing data for JCT NM 414 near Ojo Caliente).

24.     Upon identifying the significant gap in its service, Verizon requested that TowerCo locate a wireless communications facility to remedy that gap in service.

25.     TowerCo begins its site selection process by evaluating the existing infrastructure in and around the gap area.  There are no other wireless facilities located within a 1-mile radius of the Subject Property.  Likewise, there are no existing buildings or other structures, including rooftops or other towers that could support the required antennas or that were technically feasible for meeting Verizon's coverage objectives and remedying the service gap.

26.     Next, TowerCo investigated public and private property upon which a tower could be built.  TowerCo identified four properties that were potentially appropriate for a wireless communications facility to remedy the Verizon gap in coverage.

27.     To be an appropriate candidate, a location would have to fill the significant gap in service, comply with local zoning standards, have a landlord willing to lease an area at commercially reasonable terms, and have terrain and other natural features suitable for constructing a wireless communications facility.

28.     One of the four properties was publicly owned land managed by the Bureau of Land Management ("BLM").  However, despite several inquiries via e-mail and telephone, BLM did not respond to TowerCo.

29.     The three remaining candidate sites were privately owned parcels.  Each of the three sites met the applicable zoning requirements and had adequate space to lease for the Proposed Facility.

30.     Of the three private property candidate sites, only one property owner responded to TowerCo's inquiry—the owner of the Subject Property.  Verizon's RF engineering team reviewed and evaluated this site and determined that it could meet Verizon's coverage objectives and fill the service gap.  In addition, the Subject Property met the relevant zoning requirements, and the terrain could support the Proposed Facility.

31.     The property on which the Proposed Facility would be located is within the Community Rural Agricultural District (CRAD) zoning district.  The parcels surrounding the Subject Property are predominantly rural and undeveloped, with few residential properties nearby.

32.     The Subject Property is located at 3 Private Drive 1690, Ojo Caliente, NM 87549, in Rio Arriba County near Highway 285.

33.     The Subject Property is owned by the RPC and SAC Revocable Trust with Katharine Fishman Cook as the Trustee.  The RPC and SAC Revocable Trust have consented to TowerCo and its vendors entering the Subject Property to perform work related to the Proposed Facility and to file documents related to that work, including obtaining any necessary governmental approvals, and they have entered into a lease agreement with TowerCo for the installation of the Proposed Facility on the Subject Property.

34.     Pursuant to Rio Arriba County Ordinance 2012-01 § 9.02, a SUP is required for all "Class III land uses," which include, among other things, "Towers."

35.     Under the Rio Arriba County Ordinance 2026-02, a "Tower" is defined as "a structure, guided or freestanding, that supports one or more antenna."

36.     Rio Arriba County Ordinance 2026-02 establishes the requirements applicable to applications for SUPs for Towers and wireless communications facilities generally.

37. Rio Arriba County Ordinance 2026-02 provides that the Planning and Zoning Director and consultant(s) will review all SUP applications within 30 days of submission to determine if the application is complete, and that the County will notify the applicant if the application is not complete.

38. On October 9, 2025, TowerCo submitted its application to the County for an SUP to construct and install the Proposed Facility at the Subject Property ("Application").

39. In support of its Application, TowerCo submitted all materials required by the County Ordinances, including, among other things, site photos, maps of the Subject Property and surrounding parcels, and engineering drawings showing the dimensions and setbacks of the Proposed Facility.  TowerCo also submitted a site survey, an alternative site analysis, an RF design analysis, and a supporting narrative that provides additional information about the project and explains how it would meet the requirements of the County Ordinances.

40. TowerCo's Application proposed the construction of a 120-foot monopole tower with a small equipment cabinet.

41. Among other things, the Application demonstrated that the Proposed Facility is necessary to remedy the significant gap in service currently suffered by Verizon in the area near the Subject Property.

42. The technical drawings provided in the Application also showed that the Proposed Facility can accommodate the wireless facilities of at least two additional wireless carriers, for a total of three carriers' wireless facilities.

43. Verizon has already committed to being the first tenant of the Proposed Facility.

44. Because the Proposed Facility can support the wireless facilities of up to three carriers, construction of the Proposed Facility would reduce the need for additional structures to address other carriers' service gaps near the Subject Property.

45. Pursuant to County Ordinance 2012-01, SUP applications are initially reviewed by Planning and Zoning Committee Staff. The Planning and Zoning Director may approve or deny an application, or refer it to the Planning and Zoning Committee and/or Board for final review and approval.

46. The Planning Committee engaged a third-party consultant, Wireless Tower Solutions, to review TowerCo's Application. Wireless Tower Solutions agreed with TowerCo's RF analysis showing a significant gap in coverage, and that the Proposed Facility at the Subject Property was the least intrusive means of remedying that gap. Wireless Tower Solutions found that the Application met the requirements of the County Ordinances and recommended approval of the Application.

47. On December 3, 2025, the Planning and Zoning Committee held a hearing to review the Application. The Planning and Zoning Committee voted 3 to 1 to approve the application.

48. On December 18, 2025, the Board held a public hearing to review and consider the Application.

49. During the December 18 hearing, Mr. Williamson from Wireless Tower Solutions made a presentation regarding TowerCo's Application. Mr. Williamson's presentation was thorough and provided considerable technical evidence supporting TowerCo's application, such as a detailed analysis of the key components of the Proposed Facility's plans, justification for the new tower, including a review of TowerCo's alternative site analysis, and compliance with the

Complaint for Declaratory and Injunctive Relief and Expedited Treatment - Page 10

County's Ordinances.  In each case, Mr. Williamson's analysis supported TowerCo's Application and concluded that the Application complied with all relevant parts of the Ordinances.

50.    Following presentation of the Application, Board Chair Brandon Bustos polled those in attendance at the hearing as to those in favor of the application and those opposed to the Application.  During this time, two people raised their hands in opposition, and two people raised their hands in favor.

51.    During the December 18 hearing, two members of the public spoke in opposition to the Proposed Facility.

52.    Mr. Jonathan Garcia Jr. stated that while he was not opposed to the Proposed Facility itself, he did oppose the location.  He further asserted that the Proposed Facility would be located 250 to 300 yards from his property, that he believed there were several other towers in the area that could be used, and that he did not move out there to have an eyesore so close to his house.  Mr. Garcia also asserted that he believed there was BLM property in the area that would be a better option and that TowerCo should work with BLM to find an alternative.  Mr. Garcia did not provide any support or evidence for his assertions regarding the location of the Proposed Facility, whether he would be able to see the Proposed Facility (or how much of it) from his property, whether there were in fact several other towers in the area or whether they were capable to curing the coverage gap, or whether any BLM land was available for a tower.

53.    Mr. Felipe Montoya, another area resident, stated that he would like compensation for the decline in the property value of his house and others in the area, as well as for the health concerns, all allegedly caused by the Proposed Facility.  He further stated that he is not against the cell tower, but does not want to see it.

54.    Mr. Scott September, a TowerCo representative, testified and responded to this opposition.  Mr. September testified that TowerCo performed an alternative site analysis, but that when a site is developed, it must be leasable and buildable, and in the least intrusive location possible.  He further testified regarding TowerCo's investigation of alternative sites and explained that the surrounding BLM sites were not feasible.  He also explained that other parts of the surrounding area are floodplains and therefore unsuitable for building a tower.

55.    Mr. September also testified to the significant gap in coverage.  He explained that the Subject Property was chosen because the Proposed Facility must be close enough to the road to provide the RF signal necessary to remedy the coverage gap near Highway 285.  He emphasized that this stretch of Highway 285 sees significant daily traffic – over 2,900 cars per day – and that the Proposed Facility is needed to provide the necessary service in case of an emergency.

56.    During the hearing, the Planning and Zoning Director and County Manager recommended approval of the Application.

57.    During Board deliberation, Commissioner Morales stated that he would not support approval of the Application until the Proposed Facility was moved to a different location, but provided no further explanation or support for his decision, and did not identify any other location that may be available for the Proposed Facility.

58.    At the close of deliberations, the Board voted 2-0 to deny TowerCo's Application, with one Commissioner abstaining.

59.    On January 29, 2026, the Board issued a written decision denying the Application (the "Denial"), attached hereto as Exhibit 1.

60.     The Denial did not contain any findings of fact, nor did it articulate any reasons for denying the Application.  The Denial merely stated that "[t]he Board found that the application did not satisfy the County's regulatory requirements for the siting of telecommunications facilities."

61.     The Denial was the final action of the County on TowerCo's Application.

62.     The Denial is not supported by substantial evidence in the record.

63.     The Denial prohibits the provision of personal wireless services to individuals who live, work, commute, and otherwise travel through the gap in coverage on Highway 285 near the Subject Property.

64.     Pursuant to 47 U.S.C. § 332(c)(7)(B)(v), "[a]ny person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis."

65.     This action is timely filed because it was filed within thirty days after the Board's Denial, which constituted the Defendants' final action related to TowerCo's Application.

## COUNT I
### (Violation of 47 U.S.C. § 332(c)(7)(B)(i)(II) –
### Effective Prohibition of Personal Wireless Services)

66.     Plaintiff incorporates by reference and realleges the foregoing factual allegations in Paragraphs 1 through 65 as if fully set forth herein.

67.     Pursuant to 47 U.S.C. § 332(c)(7)(B)(i)(II), "[t]he regulation of the placement, construction, and modification of personal wireless service facilities by any . . . local government thereof . . . shall not have the effect of prohibiting the provision of personal wireless services."

Complaint for Declaratory and Injunctive Relief and Expedited Treatment - Page 13

68.    In *AT&T Mobility Servs., LLC v. Vill. of Corrales*, the Tenth Circuit explained that a wireless provider could prevail on an effective-prohibition claim by "showing that (1) the denial of a permit prevented AT & T from closing a 'significant gap' in existing services and (2) its Tower was the least intrusive means of doing so," *AT&T Mobility Servs., LLC v. Vill. of Corrales*, 642 F. App'x 886, 889 (10th Cir. 2016).  A significant gap can include both in-building and in-vehicle gaps in service.  *Id.* at 889-90.

69.    RF engineering evidence demonstrates that Verizon has a significant gap in reliable personal wireless service in the area in and around the Subject Property along Highway 285.

70.    TowerCo undertook a good-faith and thorough investigation of potential alternative sites in and around the area within which a wireless communications facility must be located to remedy the Verizon coverage and function effectively within Verizon's network of existing facilities.  Within the relevant area, there are no existing structures of sufficient height or of a type or design on which a wireless communications facility could be installed to cure the existing significant gaps in personal wireless service.  And no less intrusive sites are feasible or practically available.

71.    Thus, the Defendants' denial of TowerCo's Application effectively prohibits the provision of personal wireless service in violation of and is preempted by Section 332(c)(7)(B)(i)(II) of the Communications Act and should be set aside and enjoined by the Court on that basis. Further, this Court should exercise its power to issue an order commanding the Defendants to approve TowerCo's SUP Application and all related permits.

## COUNT II
**(Violation of 47 U.S.C. § 332(c)(7)(B)(iii) – Lack of Substantial Evidence)**

Complaint for Declaratory and Injunctive Relief and Expedited Treatment - Page 14

72.    Plaintiff incorporates by reference and realleges the foregoing factual allegations in Paragraphs 1 through 71 as if fully set forth herein.

73.    Pursuant to 47 U.S.C. § 332(c)(7)(B)(iii), "[a]ny decision by a . . . local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be . . . supported by substantial evidence contained in a written record."

74.    "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek v. Berryhill*, 587 U.S. 97, 102 (citing *T-Mobile South, LLC v. Roswell*, 574 U.S. 293, 301 (2015)). "Substantial evidence" is "more than a mere scintilla." *Id.* (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (emphasis deleted)). Under Tenth Circuit law, "[s]ubstantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decisionmaker." *T-Mobile Cent., LLC v. Unified Gov't of Wyandotte Cnty*, 546 F.3d 1299, 1307 (10th Cir. 2008). While "[t]he possibility of drawing two competing conclusions from the evidence does not prevent a finding of substantial evidence . . . if the record as a whole contains conflicting evidence, the fact-finder must adequately explain its reasons for rejecting or discrediting competent evidence." *Id.* Generalized opposition to wireless facilities is not substantial evidence for purposes of Section 332(c)(7)(B)(iii). *See, e.g., Verizon Wireless (VAW) LLC v. Douglas Cty., Kan. Bd. of Cnty. Comm'rs*, 544 F. Supp. 2d 1218, 1249 (D. Kan. 2008); *id.* at n.45 (collecting cases). A denial based on a factor that is not a factor for consideration under the local law is not supported by substantial evidence. *See Wyandotte,* 546 F.3d at 1308 (denial based on lack of a significant gap was not supported by substantial evidence because the local code did not require such a showing).

Complaint for Declaratory and Injunctive Relief and Expedited Treatment - Page 15

75.     Further, in enforcing Section 332(c)(7)(B)(iii), the Supreme Court determined that "[i]n order to determine whether a locality's denial was supported by substantial evidence . . . courts must be able to identify the reason or reasons why the locality denied the application." *Roswell*, 574 U.S. at 300; *see also Santa Fe All. for Pub. Health & Safety v. City of Santa Fe, New Mexico*, 993 F.3d 802, 812 (10th Cir. 2021).  The Supreme Court further explained that "[b]y employing the term 'substantial evidence,' Congress thus invoked, among other things, our recognition that 'the orderly functioning of the process of [substantial-evidence] review requires that the grounds upon which the administrative agency acted be clearly disclosed,' and that 'courts cannot exercise their duty of [substantial-evidence] review unless they are advised of the considerations underlying the action under review.'"  *Roswell*, 574 U.S. at 301.

76.     While the *Roswell* Court did not require the reasons for a denial to appear in the same writing conveying that denial, the Court made clear that such reasons must be provided in writing *somewhere* and at essentially the same time as its denial.  *See id.* at 302-04.

77.     TowerCo's Application with respect to constructing the Proposed Facility at the Subject Property satisfied all of the criteria set forth in the relevant County Ordinances.

78.     The Planning Committee supported the Application and provided a detailed analysis, which concluded that TowerCo's Application met all of the requirements of the County's Ordinances and should be approved.

79.     Opponents of TowerCo's Application did not submit any technical evidence or other evidence in the administrative record rebutting any of the information contained in TowerCo's Application.

80.     In fact, the Board was not presented with *any* evidence rebutting or even attempting to rebut the information and data in both the Application and the Planning Committee's analysis.

81.     Opponents, at best, raised generalized concerns with the Proposed Facility based solely on the location of the Subject Property.  Opponents also expressed unsupported concerns about "health" and property values.

82.     At least one Commissioner expressed completely unsupported opposition to the location of the Proposed Facility as well.

83.     A representative of TowerCo testified and rebutted the concerns expressed by opponents and explained the need for the Proposed Facility, why alternative sites were not feasible, and that the Proposed Facility complies with all FCC standards, including RF emissions standards.

84.     Despite the complete lack of evidence that the Proposed Facility did not comply with the County Ordinance requirements, the Board nonetheless denied TowerCo's Application. In doing so, the Board's Denial ignores the undisputed evidence in the record presented by TowerCo and the County's own Planning Committee demonstrating that the requested SUP should have been approved in accordance with the County's existing standards.

85.     The written record of the Board's December 18 hearing is devoid of any reason(s) or evidence justifying the Board's Denial.

86.     Further, the Denial provides no reasons for the Board's decision and lacks any explanation or basis for its "finding" that TowerCo's Application did not meet the regulatory requirements of the County's Ordinance.

87.     Accordingly, the Denial's conclusions and findings are not supported by *any evidence*, let alone substantial evidence in the written record, as required by Section 332(c)(7)(B)(iii)'s "in writing requirements" as explained in *Roswell* and other Tenth Circuit caselaw.

88.     Consequently, the Defendants' Denial is not supported by substantial evidence in the record and, therefore, violates Section 332(c)(7)(B)(iii) of the Communications Act and should be set aside and enjoined by the Court on that basis.  Further, this Court should exercise its power to issue an order commanding the Defendants to approve TowerCo's Application for an SUP and issue all related permtis.

**WHEREFORE,** Plaintiff demands judgment against the Defendants as follows:

1.     An expedited review of the matters set forth in this Complaint, pursuant to 47 U.S.C. § 332(c)(7)(B)(v);

2.     A judgment that the Defendants' actions and decisions have the effect of prohibiting the provision of personal wireless service, in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II);

3.     A judgment that the Defendants' actions and decisions are not supported by substantial evidence in the written record, in violation of 47 U.S.C. § 332(c)(7)(B)(iii);

4.     A judgment that the Defendants' actions and decisions violate and are preempted by the Communications Act and are therefore void and invalid;

5.     An order requiring the Defendants to grant the Application and thereby approve the Proposed Facility within 15 days after the Court enters its judgment;

Complaint for Declaratory and Injunctive Relief and Expedited Treatment - Page 18

6.      An order directing the Defendants to issue all subsequent and ancillary approvals and permits necessary for the construction of the Proposed Facility within 15 days after the court enters its judgment;

7.      An award of Plaintiff's costs, including reasonable attorneys' fees; and

8.      Such other and further relief as the Court may deem just and proper.

Dated: February 27, 2026

Respectfully,

Holland & Hart LLP

By: /s/ *Judd C West*
    Judd C. West
    Lila Jones
    110 N. Guadalupe Street, Suite 1
    Santa Fe, NM 87501
    Tel: 505-988-4421
    Email: jcwest@hollandhart.com
    Email: lcjones@hollandhart.com

~ and ~

Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.
T. Scott Thompson
Daniel P. Reing
555 12th St. NW, Suite 1100
Washington, DC 20004
Tel: 202-434-7440
Email: sthompson@mintz.com
Email: dpreing@mintz.com

*Attorneys for Plaintiff TowerCo VI, LLC*

37159922

Complaint for Declaratory and Injunctive Relief and Expedited Treatment - Page 19